**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3012
_____

OMOTAYO AJAYI,
                              Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-087-446)
Immigration Judge:  Honorable Dorothy Harbeck

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 18, 2012
Before:  FISHER, WEIS and BARRY, <u>Circuit</u> <u>Judges</u>
(Opinion filed: July 27, 2012)
_____

OPINION
_____

PER CURIAM.

Omotayo Ajayi petitions for review of the Board of Immigration Appeals'

("BIA") final order of removal.  We grant the petition, vacate the final order of

removal, and remand to the BIA.

1

This matter comes before us with a detailed factual record by the Immigration Judge ("IJ") who had access to independent sources of corroborating evidence not often available in such determinations. The BIA reversed in a very brief opinion that failed to meet the thorough analysis prepared by the IJ. As we have commented on prior occasions, the BIA may not, consistent with due process, base its decision on only one or two facts plucked from the record. *See, e.g., Huang v. Att'y Gen.,* 620 F.3d 372, 388-89 (3d Cir. 2010).

A review of the background reveals the following. Ajayi, a native of Nigeria, came to the United States in 1989 on a visitor's visa and overstayed the six months permissible time. Both of his parents are naturalized United States citizens. In 2001 Ajayi married a United States citizen; he and his wife have three children, each of whom is a United States citizen. He continued his education while in this country, earning both bachelor's and master's degrees in business. Ajayi has been gainfully employed throughout most of his time here. He has supported his wife and children and has opened his home to assist his wife's family. He has encouraged his wife's continuing education and has actively contributed to his community through his church work. With the sole exception of a misdemeanor for failing to notify the government of his change of address, he has no criminal record.

For several years prior to the immigration proceedings, Ajayi had been eligible to become a lawful permanent resident both by virtue of his parents' citizenship and, later, by his marriage to a United States citizen. Indeed, a Form I-130 Alien Relative Petition had been filed on his behalf by his parents and was approved. However, for reasons not apparent in the record, he neglected to adjust his status.

Ajayi's problems with the immigration authorities began when he attempted to obtain a passport so he could travel to England for the funeral of his uncle, to whom he was deeply attached. Perhaps anticipating the successful completion of the Form I-130 procedures, and needing to travel quickly, he represented in his passport application that he was a United States citizen. He also told North Carolina authorities that he had been born in Charlotte, North Carolina in his effort to secure the travel document. The Department of Homeland Security ("DHS") subsequently brought criminal proceedings against him for misrepresenting his citizenship.

Ajayi was indicted for falsely claiming citizenship, but after negotiations in the District Court he entered into a plea agreement pursuant to which he pleaded guilty to a lesser misdemeanor charge of failing to report his change of address to the immigration officials and DHS dropped all other charges. The able and

experienced District Court Judge expressed her view that, in light of Ajayi's otherwise unblemished record and his ability to adjust his status, his misrepresentation of citizenship was among the "dumbest" things she had encountered in her lengthy service on the bench. After reviewing the favorable pre-sentence report, she imposed a sentence of five days time served, one year supervised release and a fine of two hundred dollars (payable at a rate of twenty dollars per month). The District Judge also suggested that the probation officers provide assistance to Ajayi in managing his finances.

Shortly after Ajayi was sentenced, DHS began removal proceedings. Conceding that he was removable for overstaying his visa, Ajayi applied for cancellation of removal.

In a detailed and reasoned opinion, the IJ concluded that Ajayi met all four requirements to be eligible for cancellation of removal. In relevant part to this appeal, she determined that despite his misdemeanor conviction and his misrepresentations of citizenship, the totality of Ajayi's circumstances demonstrated that he was a person of "good moral character" during the requisite time period, as required by 8 U.S.C. §1229b(b)(1)(B). She expressed some misgivings as to his misrepresentations of citizenship but concluded, after reviewing his conduct for approximately twenty years in this country, and taking

4

into account his candor in admitting that he had also misrepresented his citizenship so he could obtain employment and later a mortgage, his behavior on the whole and his credible remorse for his actions established his good character. "[B]ased on a totality of the circumstances and the other factors in [Ajayi's] record, and given the fact that [Ajayi] certainly appears to be very remorseful of this, although this Court does not evaluate remorse, in this specific case, I do think that [Ajayi] has shown that he is a person of good moral character. … [B]ased on a balancing of these positive and negative factors, the Court makes a determination that [Ajayi] is a person of good moral character."[1] Accordingly, the IJ granted Ajayi's application for cancellation of removal.

For reasons not disclosed in the record, DHS decided to appeal the IJ's decision. The BIA issued a cursory opinion with no consideration given to the majority of the factors relied upon by the IJ going to Ajayi's good moral character, including the favorable and detailed pre-sentencing report. The Board said that because Ajayi had misrepresented his citizenship while applying for a passport, he was not of good moral character and was therefore ineligible for cancellation of removal. The Board reversed the cancellation of removal and ordered Ajayi

---

[1] The IJ also went on to find that removing Ajayi would result in an extreme hardship to his wife and children, another required element of eligibility for cancellation of removal.

5

removed to Nigeria. Ajayi filed a timely appeal.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). *See Abdulai v. Ashcroft*, 239 F.3d 542, 547 (3d Cir. 2001). In this case, the government challenges our jurisdiction to review the BIA's discretionary decision to deny Ajayi cancellation of removal, citing 8 U.S.C. §1252(a)(2)(B)(i). However, pursuant to a provision added to the statute in 2005, nothing in that section "shall be construed as precluding review of constitutional claims or questions of law raised on a petition for review filed with an appropriate court of appeals." 8 U.S.C. §1252(a)(2)(D)(the "Savings Section"). Read reasonably, the statutory language implies that the actual decision to remove is one committed to the Attorney General, but preservation of the alien's constitutional and statutory rights is within the domain of the courts.[2] Thus, we conclude that we retain jurisdiction to hear Ajayi's appeal for the purpose of considering and ruling upon the process by which the BIA reached its decision, *i.e.*, the process by which the BIA reviewed the facts of record and weighed the competing equities.

BIA's truncated review of the record and its selective reliance on only a few

---

[2] *Mendez-Moranchel v. Ashcroft*, 338 F.3d 176 (3d Cir. 2003) limited our jurisdiction in certain discretionary matters but the Savings Section amendment two years later made it clear that the courts retained jurisdiction over statutory and constitutional interpretation.

factors pertinent to a determination of "good moral character" is inadequate. The determination of an individual's character requires a thoughtful balancing of a multitude of factors and gauging whether, as a whole, that individual's conduct is consistent with current ethical standards. It is a case-by-case determination that cannot be shortcut by pigeon-holing. As observed by a highly respected panel when considering the test for good moral character for naturalization purposes, "it is a test incapable of exact definition; the best we can do is to improvise the response that the 'ordinary' man or woman would make, if the question were put whether the conduct was consistent with a 'good moral character'." *Posusta v. United States*, 285 F.2d 533, 535 (2d Cir. 1961) (Circuit Judges Hand, Friendly, and Clark).

The question before the IJ and later the BIA is whether Ajayi's conduct in misrepresenting his citizenship -- set against his prior history of being a productive member of his community -- falls below the standards of an average citizen. That characterization must be determined in context. The BIA has itself acknowledged that misrepresentations of citizenship alone do not necessarily preclude a showing of good moral character. *See Matter of Guadarrama*, 24 I & N Dec. 625 (2008). Nowhere does the BIA refer to Ajayi's history in his community, his more than twenty productive and law abiding years in this country, his close family ties in the

7

United States, or the exigencies of his uncle's death which surrounded his attempt to obtain a passport. Furthermore, nowhere does the BIA provide an explanation of why the record in full warrants a different conclusion from that reached by the IJ who considered, *inter alia*, all of the equities favoring Ajayi.

Our opinion in *Huang,* 620 F.3d at 388-89, requires that the BIA meaningfully consider and address the equities that favor Ajayi. Without doing so, its decision cannot stand.

For the reasons set forth above, we remand to the BIA for further proceedings consistent with this opinion.